**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 17-03771** |
| **LIZANNE LA SALLE RIVERA** | **CHAPTER 13** |
| Debtor(s) | <span style="color:red">**FILED & ENTERED ON 01/24/2018**</span> |

## OPINION & ORDER

### I.  Factual Background

Lizanne La Salle Rivera (hereinafter, "Debtor") filed for chapter 13 relief on May 30, 2017. Víctor Matos González (hereinafter, "Creditor") was listed as a creditor in Debtor's master address list and schedules. Consequently, Creditor was notified by the Clerk's office that the final date to file general unsecured claims had been scheduled for October 3, 2017. See Dkt. No. 3. Moreover, both, Creditor and his then legal representative, were present at the § 341 meeting of creditors held on July 5, 2017.

Due to the passage of two hurricanes over the island of Puerto Rico, Hurricanes Irma and Maria, on September 5, 2017, and September 20, 2017, respectively, the U.S. Bankruptcy Court for the District of Puerto Rico (hereinafter, Bankruptcy Court) issued five different General Orders extending "all periods set by statutes of limitations applicable to causes of action, cases and proceedings filed, or to be filed in this court" to September 11, 2017, September 13, 2017,

September 15, 2017, September 22, and lastly November 6, 2017.[1] All the aforesaid General Orders were sent to all parties in the case at bar.

In addition to these Orders, the Bankruptcy Court also issued General Order 17-06 on October 6, 2017, where it informed the bar and the general public that it was accepting conventional paper filings in light of the passage of Hurricane Maria. The General Order's purpose was to mitigate the undue hardship electronic filing may create due to the lack of electrical power and internet service upon attorneys and the general public.

Creditor filed his *Motion Requesting Approval of Late Claim* [Dkt. No. 32] on November 7, 2017, one day after the November 6, 2017, extension provided by the Bankruptcy Court in its General Order 17-05. Also, on November 7, 2017, Creditor filed claim number 5-1. The filing of claim number 5-1 was followed by the chapter 13 *Trustee's Objection to Claim No. 5 filed by Victor Matos Gonzalez & Request for Waiver to Place Bond* [Dkt. No. 34]; Creditor's *Answer to Objection to Claim #5* [Dkt. No. 41]; and Debtor's *Opposition to Motion for Leave to File Late Claim (Docket #32)* [Dkt. No. 42].

The court will first address the question of whether or not to allow the late filed claim as this determination may make the *Trustee's Objection to Claim No. 5 filed by Victor Matos Gonzalez & Request for Waiver to Place Bond* [Dkt. No. 34], MOOT.

## II.    Applicable Law

Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure allows the Bankruptcy Court to grant a motion for late filing of a proof of claim as long as the failure to comply with the deadline was the result of excusable neglect. The Supreme Court of the United States examined

---

[1] General Order 17-01; General Order 17-02; General Order 17-03; General Order 17-04; and General Order 17-05, respectively.

-2-

this issue when it resolved <u>Pioneer Investment Services Co. v. Brunswic Associates Limited Partnership</u>, 507 U.S. 380 (1993).

Neglect is defined as "to give little attention or respect" to a matter, or "to leave undone or unattended especially through carelessness." Webster's Ninth New Collegiate Dictionary 791 (1983). The Supreme Court observed in <u>Pioneer</u> that courts are in their right to allow late filings caused by neglect, as long as they found said neglect to be excusable. In <u>Pioneer</u>, the Supreme Court utilized four factors to make a determination as to the excusable nature of the neglect:

> With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

<u>Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380, 395 (1993)

Moreover, the Supreme Court in <u>Pioneer</u> clarified that

> Rule 9006(b) does not simply command courts to permit late filing whenever it would be "equitable" in light of all the circumstances. Rather, it establishes that the courts may exercise their discretion in accord with the equities only if the failure to meet the deadline resulted from excusable neglect in the first place. Whether the failure resulted from excusable neglect depends on the nature of the omission itself, both in terms of cause and culpability. Consequently, until the reason for the omission is determined to be sufficiently blameless, the consequences of the failure, such as the effect on the parties or the impact on the judicial system, are not relevant.

<u>Id.</u> at 396.

Furthermore, in stressing the importance of the reasons behind the noncompliance with bar dates as opposed to the other factors when analyzing whether to allow a late filing or not, the Supreme Court added: "If the goal of requiring neglect to be "excusable" is to deter culpable noncompliance, the consequences of such noncompliance should be irrelevant. To hold otherwise not only undermines deterrence, but excuses the inexcusable." Id. at 404. Therefore,

> [f]irst, we must examine the failure to act itself and ask if it resulted from excusable neglect. If it did, then the lower court may, in its discretion, permit untimely action in accord with the equities. But if the failure did not result from excusable neglect, there is no reason to consider the effects of the failure.

Id.

### III. Legal Analysis

Creditor alleges in his motion dated November 7, 2017, that his late filed claim should be allowed due to the problems his legal representative, Mr. Guillermo F. De Guzman, Esq., faced following the hurricanes. "It was but until very recently that we were able open our offices and to reach the files of our cases, including the one of the captioned case."

Furthermore, Creditor states:

> (1)it was unable to file a timely claim due to the fact the undersigned's office was closed as a result of the effects on hurricanes Irma and Maria that left us without energy and interned service; (2) this attorney was not sure of the precise bar date until today, when we were able to inspect the file of the case; (3) hardship situations have hampered many efforts to timely comply with due dates in Puerto Rico, given the extraordinary circumstances recently experienced in the Island; (4) only one day has transpired since the new bar date elapsed; and (4) no prejudice or delay will result from the filing of Creditor's proof of claim.

Creditor's motion [Dkt. No. 32, pgs. 2-3].

On the other hand, Debtor makes a strong case for why Creditor's actions do not constitute excusable neglect. Debtor stresses Creditor's carelessness in filing the claim and makes an attempt to show prejudice should the claim be allowed.

This court agrees with Debtor's legal reasoning and DENIES Creditor's *Motion Requesting Approval of Late Claim* [Dkt. No. 32]. This court finds Creditor acted with neglect and that such neglect is inexcusable. Creditor was aware of his deadline to file a proof of claim since May 31, 2017, in order to participate in the distribution of the estate's assets. He attended the § 341 meeting on July 5, 2017, along with his legal representative, and received five (5) notifications from the Bankruptcy Court's Clerk's Office informing him of the extended deadlines, the first one of which was sent September 5, 2017. In addition, Creditor knew that as of October 10, 2017, the Clerk's Office was accepting paper filings in lieu of electronic submissions.

As to the issues related to the passing of both Hurricanes Irma and Maria over Puerto Rico, this court acknowledges the damages and suffering endured by its residents and the obstacles it brought into the judicial system. Nevertheless, as stated in his motion, Creditor's legal representative was able to open his office before the November 6, 2017 due date. Given the approaching claim filing deadline, utmost priority was owed to the case at bar. Had electrical power and internet connection been an obstacle for submitting the claim before November 6, 2017, the Bankruptcy Court's General Orders allowed for documents to be submitted in paper format and the Clerk's Office was open to the public on October 10, 2017. See General Order 17-06.

Thus, only providing general pretexts related to the passing of the two hurricanes over Puerto Rico is not a convincing enough reason for not having been able to submit the proof of

claim before the extended deadline of November 6, 2017. Because we find Creditor's neglect to be inexcusable, as per Pioneer, we must not entertain any other consideration. Analyzing the consequences of said denial, such as the effect on the parties or the impact on the judicial system, is not relevant and would be an attempt to justify the inexcusable.

**IV.     Conclusion**

WHEREFORE, the court finds Creditor's neglect inexcusable and DENIES Creditor's *Motion Requesting Approval of Late Claim* [Dkt. No. 32]. Accordingly, the Clerk is ordered to strike claim number 5-1 from the claims register of this case. The chapter 13 *Trustee's Objection to Claim No. 5 filed by Victor Matos Gonzalez & Request for Waiver to Place Bond* [Dkt. No. 34] is MOOT.

SO ORDERED

San Juan, Puerto Rico, this 24th day of January, 2018.

Brian K. Tester
U.S. Bankruptcy Judge